Barney *v.* The City of Buffalo.

———•••———

BARNEY and others *vs.* The City of Buffalo.

Commissioners appointed under section 6 of title 6, of the charter of the city of Buffalo, are not authorized to assess upon the real estate of those benefited by a canal about to be made, the *cost or expense* of constructing the same, in addition to their estimate and assessment of damages.

The assessors appointed by the common council, pursuant to section 11 of the charter, have power to assess such costs or expenses; and an assessment thereof, by them, is valid.

Where the common council of the city of Buffalo resolve and determine to take and appropriate the land necessary to lay out and construct a ship canal, and cause notice of their intention to be published 14 days, in the city paper; and commissioners to assess the damages are duly appointed, who take the oath of office but do not act, the recorder's court has the

Barney *v.* The City of Buffalo.

power, after notice of an application for that purpose has been published for 30 days, to appoint new commissioners; without requiring the proceedings to be commenced *de novo.*

The power of the court to appoint is not exhausted by the first appointment.

The court may also appoint another commissioner in the place of one who is interested, and has been appointed inadvertently.

APPEAL from the recorder's court of the city of Buffalo. The action was for forcibly, wrongfully and against the will of the plaintiffs, taking and carrying away and converting to its own use, 724 barrels of flour, the property of the plaintiffs. The defense set up was, that the property was taken and sold to collect a tax or assessment duly made, for the purpose of constructing the ship canal in Buffalo. The answer contained the facts claimed as establishing the justification. The action was tried by the recorder's court of the city of Buffalo, without a jury. On the trial, the plaintiffs proved the taking and conversion of the property by the defendant, and the value of the property, and rested. The defendant then proved, 1. That the common council of Buffalo were commissioners of highways, and that the council, on the 27th day of June, 1848, resolved that they *intended* to take and appropriate the land necessary to lay out and construct a ship canal, describing it, and the land to be taken, and directed notice of the intention to be published in the city paper for 14 days. 2. That the notice was duly published for 14 days, commencing June 30th, 1848. That on the 31st day of October the common council, by resolution, resolved *to take* the land for the ship canal, and that they would apply to the recorder's court on the 11th December, then next, for the appointment of five commissioners to assess the compensation to be paid to the owners of the land, and at the same time to determine what persons would be benefited by such improvement, and to assess the damages and expenses thereof on the real estate of the persons benefited, in proportion as nearly as might be to the benefits resulting to each. Notice of this application was duly published, and commissioners were appointed December 11th, 1848; one of whom being interested, another was appointed in his place at the same term of the court. The

Barney *v.* The City of Buffalo.

commissioners met on the 28th December, took the oath and proceeded and ascertained and assessed the compensation to be paid to the owners of the land, and determined what persons would be benefited by such improvement, and assessed the damages of the owners of the land taken, together with the expenses of the assessment, on the real estate of the persons benefited by such improvement, in proportion as near as might be, to the benefits resulting to each therefrom; but did not, at that time, or at any other time, estimate or assess the expenses of constructing the canal, or any part thereof. The report of the commissioners was confirmed by the common council. The amount assessed against the plaintiff, Barney, was $215,25, and the warrant was duly issued, January 11th, 1850, to collect this amount, with other amounts assessed against other persons. The defendant also proved that on the 27th day of February, 1849, the common council resolved, ordered and determined, that the ship canal be constructed; that on the 5th March, 1849, the council having ascertained that the expense of excavating the canal about half its length, would be $61,500, determined that, as the sum to be assessed upon the real estate to be benefited, and appointed five freeholders of the city to make the assessments. The assessors took the oath, fixed the time and place for their first meeting, and gave notice thereof. They met and made an assessment roll, and assessed the $61,500 upon the property to be benefited. The common council confirmed the assessment and deposited it with the treasurer of the city and gave notice thereof. The real estate of the plaintiffs deemed benefited was assessed $2155,31. A warrant was issued to collect the assessments, and the collector took and sold the property of the plaintiffs, mentioned in the complaint, for the purpose of collecting such assessment.

The plaintiffs then proved that on the 25th of July, 1848, after the publication of the 14 day notice, directed June 17, the council, by resolution, determined to take and appropriate the land for the canal, and that they would apply to the recorder's court on the 11th September, for the appointment of five commissioners to assess the compensation to be paid, &c.; that

notice of such application was duly given; the application made ; and commissioners were appointed who took the oath but never acted. Other facts appear sufficiently in the opinion. The recorder's court gave judgment for the plaintiffs, and the defendants appealed to this court.

*H. W. Rodgers,* for the plaintiffs.

*C. O. Pool,* for the defendants.

*By the Court,* MARVIN, J. The common council of the city of Buffalo have the power to lay out, make and open streets, alleys, lanes, highways, public grounds, basins, canals, wharves, docks and slips, in the city. On the 27th of June, 1848, the common council resolved and determined that they intended to take and appropriate the land necessary to lay out and construct a ship canal, describing it, and they caused notice of such intention to be published 14 days in the city paper, in which the lands to be taken are particularly described. July 25th, 1848, the common council, by resolution, determined to take and appropriate the land necessary for laying out and constructing such canal. It is not objected by the plaintiffs that the canal was not properly laid out, and I shall regard the action of the common council as a sufficient laying out of the canal. Notice of an application to the recorder's court for the appointment of commissioners, was duly published for thirty days, and they were appointed in September, 1848. They took the oath but did not act. The common council, October 31st, 1848, again resolved and determined to take and appropriate the land necessary, &c., and to apply to the recorder's court for the appointment of commissioners, and that notice be published thirty days in the city paper. The notice was duly published, and in pursuance thereof, application was made to the recorder's court, and the commissioners were appointed, on the 11th December, 1848. It is objected by the plaintiffs that the appointment of the commissioners on the 11th December was unauthorized and void; that as commissioners had been ap-

Barney v. The City of Buffalo.

pointed in September, pursuant to the thirty days' notice, pub-lished in June, no other commissioners could be appointed unless the whole proceedings were commenced *de novo* by the publi-cation of the 14 days' notice of intention to take and appropriate the land. In my opinion there is no foundation for this objection. The 14 days' notice of intention to take and appropriate the land had been duly given, and by the statute, *after the expira-tion of the* 14 *days' notice*, the common council is to give the thirty days' notice for the appointment of commissioners. But the statute does not declare how soon. It does not declare that the notice shall be immediately given. The thirty days' notice, in pursuance of which the commissioners were appointed, was published some three and a half months after the expiration of the 14 days' notice. The question of jurisdiction cannot be made to depend upon this lapse of time. Nor was the power of the court to appoint, exhausted by the first appointment. It is not a case, where a power exists to do a thing, and the thing being once done the power ceases. (*People* v. *Mayor, &c. of New-York,* 5 *Barb.* 44.)

Equally unfounded is the objection to the appointment, at the same term of the court, of another commissioner in the place of one who was *interested* and had been inadvertently appointed. It is provided in the statute that in case any of the commis-sioners appointed shall be unable to serve, by sickness or *any other cause,* the court may. without further notice, appoint other commissioners in their place. An interested judge is, upon principle, incompetent to act and decide, and there is no impro-priety in saying that he is *unable* to serve. Aside from the statute, it is not clear that the court would not have had the jurisdiction to supersede one of the commissioners by the ap-pointment of another without notice. (*People* v. *Mayor, &c. of New-York,* 5 *Barb,* 44.) There are many irregularities which do not affect jurisdiction.

It is also objected by the plaintiffs that the commissioners should have assessed all the expenses of the improvement, that is, the cost of making the canal, at the time they estimated and assessed the damages ; and it is insisted that in this case the

common council had no power to appoint assessors to assess the
amount to be expended in the construction of the canal.   These
are undoubtedly the important questions in the case.   Our
attention has been directed to various provisions of the charter,
particularly to sections 6 and 11, in title 6, (*Laws of* 1843, *p.*
141, 144.)

It is hardly necessary, at this day, to refer to the principle
that an authority to take private property must be shown, and
that when the authority is given by statute, the provisions of
the statute must be strictly followed.   The party who justifies
the taking of private property under a statute, must show the
power to take, and that such power has been strictly pursued.

Keeping in view the principles applicable in this class of
cases, let us proceed to the examination of the statute.   As we
have seen, the common council have power to lay out, open and
make streets, &c. and *canals.*   It is the common council that
lays out, opens and makes the streets, &c. and canals.   They
may undoubtedly lay out a street or canal before they have
acquired the title to the land necessary for its construction.
They have no power to enter upon and take possession of the
land for the purposes of the street or canal, until the damages
of the owner have been paid.   (*See last clause,* § 9, *tit.* 6, *of
the charter.*)   How are the damages to be ascertained, and how
paid, so as to acquire the title or right to enter and construct
the street or canal?   Section 6 points out the proceedings:
Whenever the street, &c. or canal, is laid out, altered, widened .
or straightened, the common council are to give a public notice
of their intention to take and appropriate the land.   After the
expiration of this notice they are to publish a notice of an ap-
plication to a court of record for the appointment of five com-
missioners to *ascertain* and *assess* the compensation to be paid
to the owner or owners of the land to be taken, and at the same
time to determine what persons will be benefited by such im-
provement, and to assess the damages and *expenses thereof* on
the real estate of the persons benefited, in proportion, &c.
The commissioners are to be sworn; they are to view the prem-
ises; they are to give notice by publication to the persons

interested; they are to determine and award to the owners of the land, compensation for taking their land, after making allowance for benefits to be derived from the improvement; and they are at the same time to assess and apportion the amount assessed for such compensation, and the expenses of such improvement, on the real estate benefited thereby, as nearly as may be, in proportion, &c. This is a sufficient reference for the present, to the 6th section. The commissioners, in the present case, it is conceded, did all that the act requires, except that they did not *assess the expenses of the improvement;* that is, they did not ascertain how much the canal would cost, and assess such amount, with the damages for the land to be taken, upon the real estate benefited thereby.

The plaintiffs insist that they should have done so, and that having omitted to do so, the power to make such assessment could not be conferred upon or be exercised by any other body. It may be remarked that this section does not declare that the commissioners shall ascertain the amount which the making of the street or canal will cost. If they are to assess the cost of constructing the street, &c. or canal, they must of course ascertain, in some way, what it is to cost. No mode is pointed out. They are to assess the damages and expenses of the improvement, they are to apportion the amount assessed for compensations, and the expenses of the improvement, on the real estate benefited. The language of this section might perhaps be so construed as to authorize the commissioners to assess the amount necessary for the construction of the work contemplated—"Expenses of such improvement," might be construed as the amount required for the making of the particular work. But should it receive such construction? Was such the intention of the legislature in making the law? The object and intention of the legislature passing a law should always be ascertained if possible. Indeed courts declare the *intention* of the legislature, when they construe any statute, although they may have failed in ascertaining correctly such intention.

One of the leading rules in ascertaining the meaning of a statute, is to examine all its parts; and all the provisions of

the statute should be reconciled and effect given to them, if possibly. It will be proper, therefore, before pronouncing definitely upon the meaning of the language employed in section 6, in title 6, to proceed and examine subsequent portions of that title, particularly § 11. By section eleven, the common council are empowered to cause any street, alley, lane or highway in the city to be graded, leveled, paved, &c. and *to cause* cross and side-walks, drains, basins, canals, &c. to be constructed, made, relaid, amended or repaired, &c. and to cause the expenses of all improvements (except side-walks) made and directed under that section, to be assessed upon the real estate in the city, deemed benefited by the improvement, in proportion, &c. It is declared that the common council shall determine the amount to be assessed for all such improvements, and shall appoint five freeholders of the city to make such assessment. The assessors are, among other things, to make an assessment roll and assess the *amount fixed by the council* on the property benefited, as equally as they can.

It is very clear that the common council is authorized by this section to cause streets, &c. and canals and basins to be constructed and made, and to cause the expenses of such construction to be assessed upon real estate, and they must *determine the amount* to be raised or assessed. These powers, if assessments are necessary, are exclusively vested in the common council. They have reference to streets, alleys, basins and canals already *laid out*, or established. The preliminary proceedings of laying out and ascertaining and paying the damages of the owners of the land taken, must have been previously had; at any rate, the damages to the owners of real estate taken must be ascertained and paid in some other proceedings, as this section does not provide for ascertaining and paying damages, but for the expenses of the improvement made under the section, that is, the grading, leveling, paving, &c. the streets, alleys, &c. and the constructing and making the drains, basins, canals, &c. It is obvious that the expenses of improvement here mentioned, do not include the cost of the land, the damages to the owner of the land taken, but simply the cost of *construct-*

Barney *v.* The City of Buffalo.

*ing* the particular work. In the case under consideration, the common council proceeded under the eleventh section. They determined the amount to be assessed for the making of a portion of the canal laid out, viz. $61,500, and they appointed the five freeholders to make the assessments. Was the common council authorized to do this? We are to construe §§ 6 and 11 together. In my opinion the common council did not exceed their powers. They acted within the scope of their authority. The case was embraced in the 11th section. The canal had been laid out, the damages of the land owners had been ascertained and their payment provided for. The canal was in the condition contemplated by § 11. It is not necessary in this case to hold that the commissioners appointed by the court could not have assessed the cost of constructing the canal at the time they ascertained and assessed the damages of the land owners; because, if the case comes under section 11, it is clear that the common council had the power to act and appoint assessors, and if the power could be conferred upon the commissioners and upon the assessors also, it might be well executed by either, but when it had been executed by the commissioners it could not then be executed by the assessors. But I place no stress upon this position.

In my opinion the sixth section should be so construed as not to confer upon the commissioners the power to assess the amount necessary to construct the canal. And this opinion is strengthened by an examination and consideration of other provisions in title 6, and also a consideration of the objects and policy of the law, and the system designed to be established under it.

Title 6, is "of streets, highways, bridges and public improvements." The fifth section gives to the common council the power to lay out, make and open streets, &c. basins, canals, &c. Then follows the 6th section, providing the manner of acquiring the title or right to the land necessary for any of the purposes specified. The object is to ascertain the compensation to be made to the owners of the land required, and who shall pay such compensation or damages, and in what proportions. Such is the leading object of the section. This is clear enough from the sec-

tion itself. It has been the general policy of our laws when land is to be acquired by cities or other corporations for public purposes, to require an application to be made to a court of record, for the appointment of commissioners. The proceeding is brought under the control and within the jurisdiction of the court. But when the corporation has obtained the land, the construction of the work and the raising the means therefor are left to the corporation This is so in proceedings to obtain land for streets in the city of New-York.

By this 6th section the commissioners make their report to the common council, when objections may be made. The council, when objections are made, may confirm the determination and assessment, or amend the same and refer the matter back to the same or other commissioners to be appointed. The common council may confirm or amend the determination and assessment of the second commission; then all the proceedings come to an end ; they are null and void. The 7th section relates to proceedings where land subject to a lease, &c. is taken. The 8th section provides for an appeal to the court of common pleas of Erie county when the council has confirmed the report. The appeal is to stay the proceedings. By the 9th section, the common council, when the amount of damages for taking the lands has been ascertained, are, within one year, to pay or tender the amount of damages, and until the damages are paid, they have no right to take or enter upon the land. The 10th section relates to widening, &c. Little and Big Buffalo creeks. This brings us to the 11th section. I have refered to these sections for the purpose of remarking that they relate exclusively to the proceedings for obtaining and paying for the land required for the improvement, and have no relation to the cost of constructing the particular work. But in section 11, this matter of *constructing* the work is taken up. I regard this as worthy of notice when we are endeavoring to ascertain the meaning of ambiguous language in section six. There is no ambiguity in section 11; its meaning is clear. It declares the process by which money is to be raised to make or construct the particular improvement, the common council having *determined* the amount.

Barney *v.* The City of Buffalo.

It is followed in other sections by provisions applicable to particular cases ; and in § 14, it is declared that all assessments except for general city taxes, by this act directed or permitted to be made upon real estate, unless it be otherwise provided by the act, shall be made in the manner particularly prescribed by the eleventh section of this title.   This is not decisive, as assessments to a certain extent are provided for in section 11, but it indicates the general policy of the law.   There are cases when the street commissioners or such other officers as the council shall direct, may make the assessment in the manner prescribed for *assessors ;* thus assessments for the construction or repair of side-walks, and in all other cases when the amount does not exceed two hundred dollars, title 6, § 20.   If the assessment proves insufficient to defray the expenses of the improvement for which it was made, the council may direct the clerk or any city officer to make a further assessment for the amount of the deficiency.   This further assessment is to be founded on the first roll, (that is, the roll made by the assessors appointed by the council.) § 22.

It seems to me after this examination of the statute, there can be no doubt as to the construction it should receive.   By the sixth section the commissioners should ascertain and *assess* the compensation to be paid to the owners of the land to be taken, and determine who are to be benefited by the improvement, and upon their real estate they are to assess such damage and the expense of the improvement.   We must limit the term *improvement* as here used, and not apply it to the construction of the street or the excavation of the canal, the amount to be raised for which is to be thereafter *determined* by the common council.   Every step taken for the accomplishment of a particular work, a street or canal, may, in one sense, be regarded as an improvement.   Improvement is a large and indefinite term.   It may be satisfied in this case by confining it to the expenses incurred by the proceedings of the commissioners which might be regarded an improvement to a certain extent, or commencement of measures which if pursued would result in an improvement in the form of a street or canal fully constructed.   It

never could, in my opinion, have been the intention of the legis-lature to require the city, in all cases where it adopted proceed-ings to obtain the right of way for a street, to assess and collect the amount necessary to open and make the street; and yet this must be the result if we adopt the construction contended for by the plaintiffs. Acquiring title to the right of way is one thing, and opening and making the street quite a different thing. It oftens happens that it is quite prudent to lay out a street and acquire the right of way in a city years before it is necessary to open and work the street. This is so in all our cities rapidly increasing in population. Streets are laid out, the damages of owners of the land taken, are ascertained, and paid, and the street remains unimproved for years, until buildings are erected upon it and its improvement is required for public use. It is in time then to resort to the proceedings for making assessments and raising money to make or improve the street. Again, the com-mon council are to *determine* the amount to be assessed or raised for a particular improvement. Suppose the common coun-cil determine to raise $1000 to improve a street in a certain manner, and they are to judge of the manner of improvement, and they expend the money and complete the improvement as they designed, and a few years after they desire to make a much more valuable improvement, no one doubts their power to do so. But if the commissioners appointed under § 6, to ascertain the damages &c. are also to assess the cost of the improvement, that is the cost of constructing the work, there is no power to repeat such assessments by commissioners, for future and additional improvements. It may perhaps be answered that the power would then be found by section 14 in the common council, viz. to cause the street to be "repaired." This is not satisfactory. Another rule for the construction of statutes is to consider those statutes that are in *pari materia,* and also subsequent statutes touching the question, as legislative constructions of the statute. (*See Bac. Ab. Statutes I.*) The view here taken is strongly con-firmed by a new section, the 25th, added to title six, in 1848. It is declared that at any time after the final confirmation of the re-port and assessment and of the filing of the same *as provided for*

Barney *v.* The City of Buffalo.

*in section six of said title*, it shall be lawful for the common council on behalf of the city to make a conveyance to the people of this state of the lands appropriated in pursuance of such section, (i. e. the 4th section,) for the basin canal and slip *to be excavated* by the state, &c. (*See Sess. Laws*, 1848, *p.* 116.) This section is found in an act to amend the act consolidating and amending the act to incorporate the city of Buffalo. In this act the 5th and 11th sections were amended and made as they now are. Can there be any doubt after reading this 25th section that the legislature understood section six, as I have construed it? That section related to the land to be taken for the Ohio basin. After the confirmation of the report and assessment *as provided* for in § 6, the common council might convey the land appropriated in pursuance of § 6, to the state for the basin, canal and slip to be excavated by the state. In short, the city was to obtain under § 6 the title to the land by assessing the damages, &c. and then convey the land to the state, and the state was to excavate the basin. This shows clearly that the legislature did not suppose in proceedings under § 6, the commissioners were bound to assess the cost of making or excavating the basin. And yet the report and assessment were to be as provided for in § 6. I shall take leave of this question after referring to a few principles and cases upon the construction of statutes.

Where a statute is plain and unambiguous, the legislature should be intended to have meant what they have plainly expressed, and there is no room in such a case for construction; but if upon an examination of the whole statute or statutes *in pari materia*, the evident intention is different from the literal import of the terms employed in a particular part of the statute, such intention must prevail. It is the will of the legislature. (*Bac. Ab. Statutes, 1. United States* v. *Fisher*, 1 *Cond. R.* 422.) All parts of the statute should be considered, and one part construed by another part. If one part is obscure, its meaning may be ascertained from other parts. If great inconvenience will result from a particular construction, such construction is to be avoided, unless the meaning of the legislature is plain. The legislative

meaning and intention, when ascertained, are always to prevail. (*Bac. Ab. Statutes, I.*) The details in one part of a statute may contain regulations restricting the extent of general expressions used in another part of the same act. (*Pennington* v. *Cox*, 2 *Cranch's R.* 33. 1 *Cond. R.* 348.) A statute should be interpreted according to the intention of the legislature apparent upon its face, and every technical rule, as to the construction or force of particular terms, must yield to the clear expression of the paramount will of the legislature. (*Wilkinson* v. *Leland*, 2 *Pet. R.* 662. *And see United States* v. *Furman*, 3 *How. U. S. R.* 565, *and cases there cited* ; *People* v. *Utica Ins. Co.* 15 *John.* 358; *Jackson* v. *Collins*, 3 *Cowen*, 89.) If it can be gathered from a subsequent statute *in pari materia*, what meaning the legislature attached to the words of a former statute, this will amount to a legislative declaration of its meaning, and will govern the construction of the first statute. (*Bac. Ab. Statutes, I.*)

I have come to the conclusion, in view of all the provisions of title six, in the defendant's charter, that the commissioners appointed by the court pursuant to § 6, were not authorized to assess upon the real estate of those benefited, the cost or expense of constructing the canal. 2. That the assessors appointed by the common council pursuant to section eleven had such authority, and that their proceedings are not void.

The defendant established upon the trial a justification, and judgment should have been in its favor.

The judgment should be reversed and a new trial granted.

New trial granted.

[NIAGARA GENERAL TERM, February 7, 1853. *Marvin, Taggart* and *Mullett*, Justices.]